IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| ROLANDAS MILINAVICIUS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CASE NO. 1:14-CV-23-WLS-TQL |
| | : | |
| Ms. BROWN, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**ORDER**

Plaintiff Rolandas Milinavicius, who is currently confined at Autry State Prison in Pelham, Georgia, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983. (Doc. 1.) Plaintiff's motions to proceed *in forma pauperis* were previously granted, and Plaintiff paid the assessed initial partial filing fee on March 20, 2014. As explained below, the claims in Plaintiff's Complaint are subject to preliminary review under 28 U.S.C. § 1915A.

**I.     STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1915A(a), a federal court is required to conduct an initial screening of a prisoner complaint "which seeks redress from a governmental entity or officer or employee of a governmental entity." Section 1915A(b) requires a federal court to dismiss a prisoner complaint that is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted" or (2) "seeks monetary relief from a defendant who is immune from such relief."

A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993). A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550

1

U.S. 544, 555-56 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level" and that the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (internal quotations and citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

In making the above determinations, all factual allegations in the complaint must be viewed as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). Moreover, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

In order to state a claim for relief under Section 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1581 (11th Cir. 1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of his claim or claims, then the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003) (affirming the district court's dismissal of a Section 1983 complaint because the plaintiff's factual allegations were insufficient to support the alleged constitutional violation); *see also* 28 U.S.C. § 1915A(b) (dictating that a complaint, or any portion thereof, that does not pass the standard in Section 1915A "shall" be dismissed on preliminary review).

## II. BACKGROUND

In this case, Plaintiff sues Autry State Prison ("Autry"), Autry Physician's Assistant (P.A.) Ms. Brown, Autry Physician Dr. McGhee, two Autry Nurses named as Jane Does, Autry Warden Alan Carter, Autry Medical Director Jane Doe, Autry Chief Counselor Ms. Bell, and Autry Counselors Osborn, Ross, Spencer, and Williams. (Compl. at 4.) Plaintiff also sues Augusta State Medical Prison Cardiologist John Doe, the Georgia Department of Corrections ("GDOC"), GDOC Director of Inmate Affairs Ricky Myrick, GDOC

Commissioner Brian Owens, and GDOC Director of Utilization Management John Doe. (*Id.*)

Plaintiff alleges that Autry State Prison officials were indifferent to his medical needs. On January 12, 2013, while incarcerated at Autry, he began having severe chest pains, became dizzy, and passed out. While other inmates observed Plaintiff and sought medical attention for him, Plaintiff regained consciousness and was told that "medical personnel had advised that they were not going to respond because Plaintiff had the capability of walking." Plaintiff alleges he had chest pains and a rapid heartbeat on February 12, 2013. Plaintiff again had chest pains and a rapid heartbeat on February 15, 2013, wherein he was taken to Albany Memorial Hospital, administered tests, and observed. Plaintiff was then returned to Autry State Prison. Plaintiff contends hospital personnel "recommend[ed] and schedule[d] [him] to return" to the hospital for additional tests, treatment, and a heart stress test, but that Autry medical personnel and prison officials refused to allow him to return to the hospital for his scheduled appointment.

On February 19, 2013, Plaintiff called his wife, who then called Defendant Counselor Osborn. Plaintiff was thereafter seen by the medical department at Autry where he was given an "unknown medication" and a "perfunctory test" but not given any other information. Plaintiff contends he submitted numerous medical requests to be seen and was summoned to the medical department on March 6, 2013, and March 13, 2013, only to be told that neither his tests results nor his medical file could be found. On April 13, 2013, Plaintiff wrote a letter to GDOC Director of Inmate Affairs Ricky Myrick asking that he assist Plaintiff in obtaining a resolution to a grievance he filed on February 19, 2013, pertaining to the insufficient medical care he received. Plaintiff contends Defendant Myrick failed to respond.

On April 12, 2013, Defendant Counselor Osborn tried to make Plaintiff "sign off" on, or withdraw, the out-of-time response by prison officials to his medical issue, but Plaintiff refused. Then, on April 16, 2013 and April 19, 2013, Plaintiff was summoned to Defendant Counselor Ross's office wherein Defendant Ross attempted to force him to sign off on his February 19, 2013 grievance, but Plaintiff again refused.

On May 1, 2013, while Plaintiff was being seen by Defendant P.A. Brown, he inquired about why he was not being given a stress test, wherein Defendant Brown told him he had no right to medical treatment.  Then, on May 13, 2013, Plaintiff was summoned to the medical department and after waiting for five hours for his stress test, Plaintiff was told his files could not be located.  On May 14, 2013, Plaintiff again saw Defendant Brown and told her he was still having chest pains and left arm pain.

Plaintiff addressed a letter to Defendant Director of Utilization Management John Doe on May 21, 2013, regarding his complaints. Defendant Doe failed to respond.  On May 30, 2013, Plaintiff was transferred to Augusta State Medical Prison ("Augusta") to be seen by a cardiologist.  Plaintiff was seen by Cardiologist John Doe on June 5, 2013, but a stress test could not be completed because Plaintiff's heart rate increased and his "skin color changed."

On June 17, 2013, Plaintiff began having severe chest pains and shortness of breath. Plaintiff was not seen by Augusta medical personnel until June 19, 2013, wherein he was told he needed to be seen by a gastroenterologist and was prescribed pain medication which he never received.  Plaintiff submitted a grievance on June 19, 2013.  Plaintiff had an appointment to be seen by the Cardiologist at Augusta on June 27, 2013, but it was cancelled[1] and he was returned to Autry State Prison.  On July 1, 2013 and July 2, 2013, Plaintiff submitted two more grievances regarding the pain medication.   Plaintiff contends he was summoned to Defendant Counselor Williams' office wherein Defendant Williams attempted to force him to "drop" both the grievance he filed at Augusta and the July 2, 2013, grievance he had just filed at Autry.

On July 3, 2013, an ultrasound was performed on Plaintiff.  Then, on July 9, 2013, Plaintiff was seen by an unidentified Physician's Assistant who refused to allow him to be seen by a gastroenterologist or to provide him the pain medication he had been prescribed. On July 19, 2013, Plaintiff began having trouble breathing and submitted a medical request, but got no response.

On August 6, 2013, Plaintiff was again returned to Augusta and placed on a heart monitor for forty-eight hours.  During that time, Plaintiff began having severe chest pains

---

[1] Plaintiff provides no explanation for the cancellation.

and extreme difficulty breathing.[2]  On August 13, 2013, Plaintiff was returned to Autry State Prison.  The next day Plaintiff again began having severe chest pains.  He then "went into a coma" and, when medical personnel arrived, they "became irate because [he] was unresponsive thus leaving [him] as [he] was and refusing to provide [him] with any type of medical attention."  On August 15, 2013, Plaintiff again experienced more chest pains and was taken to the medical department.  Plaintiff passed out and lost control of his bodily functions.  Plaintiff was given "several shots and pill medication" and was returned to his cell thirty minutes later.  On August 18, 2013, Plaintiff once again experienced chest pains and got very dizzy.  He was transported to Albany Memorial Hospital where he received "unknown" treatment and returned to the prison.  Plaintiff filed another grievance on August 19, 2013.

On August 20, 2013, Plaintiff saw Defendant P.A. Jane Doe who assured him she would give him his prescribed medications but failed to do so.  Defendant Doe then placed Plaintiff on "the mental health program" without his knowledge.  Plaintiff filed another grievance on August 23, 2013. On September 6, 2013, Plaintiff was called to Defendant Counselor Bell's office.  Defendant Bell attempted to persuade Plaintiff to sign a form withdrawing his August 23, 2013 grievance, but Plaintiff refused.  Plaintiff then had a video conference with a psychiatrist on September 13, 2013, wherein he was told he had insomnia.  On September 18, 2013, Plaintiff saw a cardiologist who told him nothing was wrong with his heart but that he may have had a stroke.  Defendant Bell again attempted to have Plaintiff sign off on the August 23, 2013 grievance.  Plaintiff again refused.

On October 2, 2013, Plaintiff received a "telemedicine" appointment wherein he was prescribed mental health medications.  Plaintiff contends he asked for a brain scan to determine if the strokes he might have suffered had caused any damage to his brain, but his request was refused.  On October 15, 2013, Plaintiff saw Mental Health Counselor Jones.  Plaintiff explained he had possibly had three strokes since January 2013 and that medical personnel at Autry State Prison had refused to allow him to be seen by a gastroenterologist.  Plaintiff states Counselor Jones inquired of the medical department why Plaintiff had not

---

[2] Plaintiff fails to state whether he attempted to see medical personnel on this date.

been seen by a gastroenterologist and why he had not received a CT scan of his brain. Plaintiff was informed he would be sent to Augusta State Medical Prison for those tests. As of October 23, 2013, Plaintiff contends he still had not received the mental health medication prescribed for him in October nor received any medical treatment for his conditions.

Plaintiff seeks declaratory judgment, a permanent injunction, compensatory damages in the amount of $300,000.00 against each defendant, and punitive damages in the amount of $300,000.00 against each defendant. (*Id.*)

### III.   DISCUSSION

**A.   Jane/John Does**

Fictitious party pleading is not generally permitted in federal court. A plaintiff may sue an unknown defendant only when he sufficiently identifies the defendant to allow service of process. *Moulds v. Bullard*, 345 F. App'x 387, 390 (11th Cir. 2009); *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992). Plaintiff has not sufficiently identified Defendants Autry State Prison Nurses Jane Doe 1 and Jane Doe 2 so as to allow for service. Thus, these Defendants are **DISMISSED** from this action.

It is found, however, that Plaintiff has sufficiently identified Autry State Prison Medical Director Jane Doe, Augusta State Medical Prison Cardiologist John Doe, and GDOC Director of Utilization Management John Doe.

**B.   Entities Not Capable of Being Sued**

As stated above, to state a claim for relief under Section 1983, a plaintiff must allege that the unconstitutional act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d at 1581. Federal Rules of Civil Procedure Rule 17(b) provides that the "[c]apacity to sue or be sued" is determined "by the law of the state where the court is located." Georgia law thus controls this issue, and the Georgia Supreme Court has explained that there are only three classes of legal entities: "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial person as the law recognizes as being capable to sue." *Georgia Insurers Insolvency Pool v. Elbert Cnty.*, 258 Ga. 317, 318 (1988) (quoting *Cravey v. Southeastern Underwriters Assn.*, 214 Ga. 450, 453 (1958)). Autry State Prison

6

is none of these. In fact, federal courts have routinely found that a prison is not an entity capable of being sued under § 1983. *See, e.g., Logue, Jr. v. Chatham Cnty. Det. Cntr.*, 2010 WL 5769485 (S.D. Ga. Dec. 29, 2010) ("Chatham County Detention Center . . . is not an entity that is subject to suit under § 1983."); *Ansley v. Franks*, 2010 WL 4007626 *2 n.2 (S.D. Ga. August 30, 2010) (A . . . jail has no independent legal existence and is . . . not . . . subject to suit under § 1983."); *Allen v. Brown*, No. CV 112–052, 2013 WL 1333175, at *3 (S.D. Ga. March 7, 2013).

As to the claims against the GDOC, the Eleventh Circuit has held that suits for both monetary damages and injunctive relief against the GDOC are barred by the Eleventh Amendment unless the State consents. *Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) (citing *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Furthermore, Plaintiff's complaint fails to allege any specific wrongdoing by the GDOC itself. Therefore, it is found that any and all claims made against the Autry State Prison and the GDOC are to be **DISMISSED**.

**C.    Supervisor Liability**

To the extent that Plaintiff has named Autry State Prison Warden Alan Carter and GDOC Commissioner Brian Owens as defendants, his claims against them must be dismissed. It is apparent from his allegations that Plaintiff named Defendant Carter and Owens as defendants because of their supervisory positions. Defendants Carter and Owens cannot be liable solely by virtue of their supervisory positions. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999). "While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong." *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (citation omitted). To state a claim against a supervisory official, Plaintiff must allege that the supervisor "personally participate[d] in the alleged unconstitutional conduct or . . . there is a causal connection between the actions of [the] supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F. 3d 1352, 1360 (11th Cir. 2003). Plaintiff has not made any such allegations or connections in this case. As such, Defendants Alan Carter and Brian Owens are hereby **DISMISSED** as parties from this action.

**D.     Failure to State a Claim**

Plaintiff's complaint alleges deliberate indifference to his medical needs, due process violations, violation of his equal protection rights, cruel and unusual punishment, as well as a state law breach of contract claim, which all appear to evolve from Defendants' failure to provide him proper medical care. (Compl. at 25-32.) Plaintiff's complaint also vaguely references a claim of retaliation (in the form of harassment and other reprisals by prison officials) resulting from his complaints and grievances regarding his medical care. (Compl. at 25.)

1.     Eighth Amendment Violations

Plaintiff's dissatisfaction with his medical care does not equate to inadequate medical care. To state an Eighth Amendment claim for inadequate medical care, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). These allegations must satisfy both an objective and subjective component. *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Peltzer*, 536 U.S. 730, 739 (2002). Under the first component, a prisoner must set forth evidence of an "objectively serious medical" need that, if left unattended, poses a substantial risk of serious harm. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000). A medical need is serious if it has been diagnosed by a doctor as mandating treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. *Hill*, 40 F.3d at 1187. The prisoner must then demonstrate that a prison official had subjective knowledge of the risk of serious harm and disregarded that risk. *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005).

The Eleventh Circuit has held that "[w]hen the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" *Blanchard v. White County Detention Center Staff*, 262 Fed.Appx. 959, 963-64 (11th Cir. 2008) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991)). Inadvertence or mere negligence in failing to provide adequate medical care does not rise to the level of a constitutional violation. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "[M]edical treatment violates the Eighth Amendment only when it is 'so

grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris,* 941 F.2d at 1505 (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Furthermore, deliberate indifference is not established where an inmate received care but is unhappy with the treatment provided. *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir.1985).

In this case, it is apparent that Plaintiff's allegations do not state a colorable claim for deliberate indifference to a serious medical need.  A review of Plaintiff's complaint details a host of medical procedures, tests, and contacts with various medical professionals.  Thus, it is found that Plaintiff received medical care for his ailments and the care was adequate.  As such, Plaintiff's claims that Defendants were deliberately indifferent to his medical needs must be **DISMISSED**.  For the same reasons, any claims of due process violations or cruel and unusual punishment relating to his medical care and treatment must also be **DISMISSED**.

    2.    First Amendment Violation

As noted above, Plaintiff makes a claim that he suffered retaliation for complaining about his medical care. (Compl. at 25.)  A prisoner "is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (letter to warden "constituted a protected exercise of his free speech rights"); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). A prisoner may thus state a First Amendment claim by alleging (1) that he complained about the conditions of his confinement, (2) that he was subsequently punished by prison officials because he made this complaint, and (3) that the consequence he suffered was severe enough to likely deter a person of ordinary firmness from making future complaints. *Id.*  Plaintiff's complaint wholly fails to establish what retaliation he suffered or that it was severe enough to deter him from continuing to complain.  Plaintiff's continued litigation belies his claims.  Furthermore, a vague claim of retaliation does not survive preliminary review. *See Rosa v. Fla. Dep't of Corr.*, 572 F. App'x 710, 716 (11th Cir. 2013) ("threadbare assertions of alleged constitutional violations, without further factual support, are insufficient to state a claim for relief.") (citation omitted).

9

Construing Plaintiff's complaint liberally, it is found that Plaintiff has failed to allege a colorable retaliation claim. Thus, Plaintiff's retaliation claim is hereby **DISMISSED.**

    3.    Fourteenth Amendment Violation

Plaintiff's equal protection claims also fail. Although Plaintiff contends that the Defendants violated his right to equal protection of the laws when they denied him the same medical care they have provided to other similarly situated inmates, he fails to support this claim with facts. Plaintiff cites the GDOC Rules and Regulations, Chapter 125-4-4-.07[3], which he contends clearly states that "all incarcerated citizens <u>shall</u> receive medical treatment, as required, and not just some." (Compl. at 26.) The Regulations do not say that. They do, however, state that "[w]hen a person is committed to a correctional institution it becomes the responsibility of the correctional authorities to provide the necessary health care for the inmate. Medical and hospital care as required shall be provided for all inmates assigned." *See* GDOC Rules and Regulations Chapter 125-4-4-.01. Plaintiff's complaint reveals that the Defendants complied with the relevant Regulation. Plaintiff was medically treated for his condition and was not treated differently than similarly situated inmates. Thus, Plaintiff's claim for violation of his right to equal protection of the laws is without merit and must be **DISMISSED**.

    4.    Breach of Contract

Plaintiff last contends that "when the Georgia Assembly made a law, O.C.G.A. § 42-5-2, appertaining to the medical care of incarcerated citizens in the State of Georgia, and required the GDOC to provide that care, that law implied a contract." (Compl. at 28.) Plaintiff alleges that the contract was breached by the Defendants when they failed to provide him adequate medical care. (*Id.*)

District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. District courts have supplemental jurisdiction over all other claims, including state law claims, "that are so related to claims in the action within such original jurisdiction that they form part of the same case

---

[3] GDOC Rules and Regulations Chapter 125-4-4-.07 actually states that all inmates shall receive dental and optical treatment including dentures and glasses, as required. Such treatment shall be provided irrespective of the length of an inmate's sentence or the proximity of his discharge date.

or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, a district court "may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367(a) ] if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3).

As discussed above, Plaintiff's federal law claims in this case are without merit. Because "[b]oth comity and economy are served when issues of state law are resolved by state courts," it is recommended that the court decline to exercise supplemental jurisdiction over any potential state law claims and dismiss those claims without prejudice. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir.2002) ("The argument for dismissing the state law claims in order to allow state courts to resolve issues of state law is even stronger when the federal law claims have been dismissed prior to trial."). As such, it is found that any state law claims of breach of contract found in Plaintiff's Complaint are to be **DISMISSED** without prejudice.

## CONCLUSION

Having conducted a preliminary review of Plaintiff's Complaint as required by 29 U.S.C. § 1915A(a), the Court finds that Plaintiff's complaint against the Defendants should be **DISMISSED.** For purposes of the three strikes provision of the Prison Litigation Reform Act (PLRA), the Court determines that its decision in this case is a strike against Plaintiff. *See* 28 U.S.C. § 1915(g) (counting as strikes any action or appeal in federal court "that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted").

**SO ORDERED**, this <u>18th</u> day of September, 2014.

<u>/s/ W. Louis Sands</u>
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**